UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                              :

DIANA C. VIDAL, *on behalf of Chanel Vidal*,       :

                                            :

                  Plaintiff,               :

                                              :

               -against-             :

                                            :

ANDREW SAUL,                       :
*Commissioner of Social Security*,        :

                                            :

                 Defendant.            :

                                            :
---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/29/2021

**OPINION ON
OVERPAYMENT APPEAL**

1:20-cv-01004 (JPC) (KHP)

**THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge**

      Diana C. Vidal ("Mrs. Vidal"), representative payee and mother of Claimant Chanel Vidal

("C.V."), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision

of the Social Security Administration (the "SSA") that they were not without fault in accepting

an overpayment of Title II Disability Insurance Benefits ("DIB"). Specifically, the SSA alleges that

an overpayment occurred when payments from the SSA were not offset by workers'

compensation benefits awarded to C.V.'s father, Ruben D. Vidal ("Mr. Vidal") – the named

claimant for DIBs. Defendant, the Commissioner of Social Security (the "Commissioner"), filed a

motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and

Plaintiff filed a response in Opposition. (*See* Opp. to Def.'s Mot.; ECF No. 34.) For the reasons

set forth below, Defendant's Motion is DENIED, and this case is REMANDED to the

Commissioner for further proceedings.

I.    **Background**

Ruben D. Vidal was found disabled and entitled to disability insurance benefits under Title II of the Social Security Act. (A.R. 17.) Plaintiff C.V., a minor and Mr. Vidal's daughter, began receiving benefits as of March 1, 2013, under the account of her father. (*Id*.) Mr. Vidal was found by the Commissioner to be mentally infirm (i.e., legally incompetent), and, as a result, his wife Diana Vidal is the designated payee for her husband and C.V. and is the Plaintiff in this matter.[1]

On April 6, 2015, the SSA sent Mrs. Vidal, the representative payee, a Notice of Overpayment indicating that C.V. had been overpaid benefits in the amount of $673 in March 2015. (A.R. 160.) On the same day, the SSA sent a similar letter indicating that Mr. Vidal was paid $1,284 more than he was due for March 2015. (A.R. 89-95.)

The next day, on April 7, 2015, Mr. Vidal (not Mrs. Vidal) appears to have filed a request for reconsideration disputing the facts and the amount of overpayment and requesting a breakdown of benefits.[2] (A.R. 126, 160-163.)

On June 3, 2015, the SSA wrote to Mrs. Vidal to indicate that it would be withholding overpaid benefits. (A.R. 53.) On October 22, 2015, the SSA wrote to Mrs. Vidal to inform her of another change in C.V.'s benefits and indicating how her benefits would be reduced and

---

[1] A representative payee is responsible for managing the payments on behalf of social security beneficiaries. The duties of the representative payee are to "use the benefits to pay for the current and future needs of the beneficiary, and properly save any benefits not needed to meet current needs. A payee must also keep records of expenses and provide an accounting to the Commissioner of how he or she used or saved benefits." A payee must report any changes or event which could affect the beneficiary's eligibility for payment and return payments to which the beneficiary is not entitled. https://www.ssa.gov/payee/faqrep.htm?tl=5 (last visited Nov. 29, 2021).

[2] The documentation is unclear as to which Vidal submitted the request, but the form appears to bear Mr. Vidal's signature.

explaining that she was overpaid $16,630 in benefits for March 2013 through September 2015. (A.R. 55-62.)

On February 2, 2016, the SSA sent Mrs. Vidal another Notice of Overpayment indicating again that C.V. had been overpaid benefits in the amount of $16,608 for the period July 1, 2013 through May 2015 as a result of a failure to offset for certain workers compensation benefits received by Mr. Vidal. (A.R. 63-64.) That amount was later adjusted downward to reflect an overpayment of $15,874 in benefits for the period June 2013 through March 2018 due to her father's receipt of workers compensation and/or public disability payments. (A.R. 65-69.)

On February 2, 2016, the SSA sent Mr. Vidal a notice indicating that Mr. Vidal was overpaid $16,679 for the same reason his daughter was overpaid. (A.R. 100-101.) In another letter addressed to Mr. Vidal, dated April 5, 2017, the SSA further explained how it ended up overpaying Mr. Vidal $16,679. (A.R. 107-108.) The amount was later adjusted downward to $10,332 for the period June 2013 through March 2018 for the same reasons his daughter's overpayment amount was adjusted. (A.R. 118, 122.) It is unclear why the communications regarding the overpayment were addressed to Mr. Vidal, as he was not the representative payee.

On June 26, 2018, Mr. Vidal (not Mrs. Vidal) appears to have requested waiver of collection of overpayments (a total of $26,206) to both C.V. and Mr. Vidal explaining that they were not at fault because they had informed the SSA of Mr. Vidal's workers compensation payments but the SSA failed to timely adjust the benefits accordingly and that the family could

not afford to repay the money.[3] (A.R. 127-135, 210.) He provided information about the family's monthly expenses at the same time. (*Id*.) The form submitted indicated a monthly income of $4,151 (which included $1,470 in Social Security Benefits and $643 in food stamps) and monthly expenses of $2,634, meaning their income exceeded expenses by $1,517 per month. (A.R. 133, 210.)

On July 3, 2018, the SSA acknowledged receipt of the waiver request but stated it could not approve the waiver request and informed the Vidals of their right to a personal conference meeting (a/k/a "waiver conference"). (A.R. 70-73.) The Vidals requested the personal conference and one was scheduled. (A.R. 163.) According to testimony at the hearing before the ALJ, the Vidals attended the waiver conference and presented new evidence of expenditures to update expenses, indicating additional expenses of $1,084.02, bringing the total monthly expenses to $3,718.09. (A.R. 211; Tr. 132-33.)[4]

On July 20, 2018, the SSA denied the request for a waiver but indicated on the waiver determination form that the Vidals had reported the workers' compensation payments and were not at fault in causing the overpayment. (A.R. 155-157; 76-77.) Waiver was denied instead on the ground that the family's income exceeded monthly expenses by $432.91 ($4,151-$3,718.09) and the family could therefore afford to repay a small amount each month. (*Id*. and 213.)

---

[3] Here again, there appears to be handwriting of two individuals on this request. Thus it is unclear which of the Vidals was responsible for filing the request.

[4] The ALJ's decision states at one point that the Vidals did not attend the waiver conference, but also that they did. (Tr. 127-54.) The Court assumes the Vidals attended the conference based on the totality of the record before it.

On September 10, 2018, Mrs. Vidal appears to have filed a written request for a hearing before an ALJ with respect to the alleged overpayments to C.V. and himself stating that "I reported all my changes timely and it is not my fault that SSA didn't do there (sic) job.  Also I don't feel that we received all the payments that you mentioned in your letters."  (A.R. 188.)

On March 27, 2019, a hearing was held before ALJ Alexander G. Levine where Mr. and Mrs. Vidal appeared and testified without counsel.  (A.R. 26-37.)  A Spanish language interpreter was present.   Mrs. Vidal provided supplemental information about the family's expenses during the relevant period showing that in 2019 the family had $3,848 in monthly expenses, which included an unexplained $800 to Mrs. Vidal," and $3,419 in monthly income. (A.R. 315-391.)[5] The ALJ addressed all substantive questions about whether and when notice was provided to the SSA about the workers' compensation benefits and monthly expenses to Mr. Vidal, not Mrs. Vidal.

Mr. Vidal explained that he was receiving workers' compensation benefits, but was waiting for a hearing to approve a retroactive amount for back surgery he underwent.  Mr. Vidal testified that once he received the retroactive workers' compensation payment, he phoned the SSA and visited the SSA office with his wife to report the payment.  (A.R. 31-33.)  On one of the calls with the SSA, the SSA purportedly told him, "this is your [workers' compensation] check, do whatever you want with it."  (A.R. 31-32.)  Mr. Vidal testified that he reported two other changes to his workers' compensation payments to SSA and that the SSA office made copies of his checks for the file and/or made a notation in his file.  (A.R. 32-33.)  The

---

[5] It is not clear whether some of the information at A.R. 315-391 was produced at the July 2018 waiver conference or whether it was all submitted at the hearing before the ALJ.

administrative record, however, contains no documentation from the SSA of Mr. or Mrs. Vidal's calls or visits to report the lump sum workers' compensation payment or changes to Mr. Vidal's workers' compensation payments.

On April 18, 2019, the ALJ issued his decision finding that C.V. was overpaid benefits in the amount of $15,874 and Mr. Vidal was overpaid benefits in the amount $10,332 during the period of June 1, 2013 through March 31, 2018.  (A.R. 19.)  The ALJ determined that pursuant to Social Security regulations 20 CFR § § 404.506(a), 404.507, and 404.510(a), and POMS SI 02260.010.B.2, the Vidals were at fault in causing the overpayment, indicating that he had considered the seven POMS SI 02260.010.B.2 factors, which include that the payee: (1) understood the cause of the overpayment at the time it occurred; (2) understood the reporting requirements; (3) agreed to report events affecting payments; (4) was aware of events that should have been reported; (5) attempted to comply with the reporting requirements; (6) had the ability and opportunity to comply with the reporting requirements; and (7) understood the obligation to return payments which were not due. *See* POMS SI 02260.010 https://secure.ssa.gov/poms.nsf/lnx/0502260010 (last viewed Nov. 29, 2021).

In finding fault, the ALJ found that Mr. Vidal lacked credibility because, although he was found to be mentally infirm, his testimony disputes that condition, and his attestations of reporting his own worker's compensation benefits were unsupported by any evidence in the record.  (A.R. 20.)  He also noted that there were more changes to Mr. Vidal's workers' compensation benefits than the number of times he allegedly reported to the SSA, which also caused him to question Mr. Vidal's credibility and supported a finding that he was not without fault for the overpayment.  Additionally, the ALJ found that the Mrs. Vidal, as representative

payee, also was not without fault because she bears the liability of insuring disbursements are properly allocated and that any change in financial status needs to be properly reported.  (A.R. 21.)  He noted that many notices were sent to Mrs. Vidal's attention about her reporting obligations and overpayments, but that there was no record in the file that showed she had reported anything.  He therefore reversed the administrative decision made at the July 2018 waiver conference that the Vidals were not at fault.

The ALJ also found that even if the Vidals were not at fault, they could afford to repay the overpayment, noting that their monthly household income exceeded expenses by $2,069, relying principally on paperwork filed by Mr. Vidal in his written request for a waiver.  (A.R. 21.) In other words, collection of the overpayment would not defeat the purposes of the act.  The ALJ also noted that there was nothing to suggest that in "equity and good conscience" the overpayment should not be collected.  Therefore, the ALJ denied the request for a waiver and found Plaintiff C.V. liable for the repayment of $15,874 (and her father liable for repayment of $10,332) for the period of June 1, 2013 through March 31, 2018.  (A.R. 22.)

The Vidals appealed the ALJ decision, but that appeal was denied on December 9, 2019. (A.R. 9.)  Only the overpayment on C.V.'s account is at issue in this case.

II.   **Applicable Law**

Under Federal Rule of Civil Procedure 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law.'"  *Guzman v. Astrue*, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990)).  Any "final decision" of the Commissioner is subject to judicial review.  42 U.S.C. §

405(g).  A court's review of a Social Security disability determination requires two distinct inquiries.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011).  First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record.  *Id.*  If the Commissioner's decision is supported by substantial evidence, the ALJ's findings as to any facts are conclusive.  42 U.S.C. §§ 405(g), 1383(c)(3).

An ALJ has an affirmative duty to develop the record on behalf of claimants.  *See Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  This duty exists because social security proceedings are "essentially non-adversarial."  20 C.F.R. § 404.900(b); *Shafer v. Colvin*, 2018 WL 4233812, at *7 (S.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 4232914 (S.D.N.Y. Sept. 4, 2018).  A remand by the court for further proceedings is appropriate when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, failed to appropriately develop the record, or to have correctly applied the regulations.  *Ming v. Astrue*, 2009 WL 2495947, at *3 (E.D.N.Y. Aug. 13, 2009); *Donnelly v. Colvin,* 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015).

After reviewing for legal error, the court then decides whether the ALJ finding is supported by substantial evidence.  *See Litvin v. Astrue*, 2011 WL 4834138, at *8 (S.D.N.Y. Oct. 12, 2011), *report and recommendation adopted*, 2011 WL 6780916 (S.D.N.Y. Dec. 23, 2011).  When examining the ALJ's decision, the court must not disturb the Commissioner's final decision if "correct legal standards were applied" and "substantial evidence supports the decision." *Butts*

*v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004); *accord Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Halloran,* 362 F.3d at 31 (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *accord Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).  "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Snell v. Apfel,* 177 F.3d 128, 132 (2d Cir. 1999).  "[E]ven if there is also substantial evidence for the plaintiff's position," if substantial evidence exists to support the Commissioner's decision, the decision must be affirmed. *Morillo v. Apfel,* 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001); *accord Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir. 1990).

Further, the Second Circuit has outlined a heightened duty an ALJ bears in the case of *pro se* claimants to ensure that the claimant has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act."  *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir. 1972).  Where, as here, the claimant is unrepresented by counsel, the ALJ is under a heightened duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"  *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Gold v. Secretary of HEW, supra,* 463 F.2d at 43).  A reviewing court must determine whether the ALJ "adequately protect[ed] the rights of [a] pro se litigant by ensuring that all of the relevant facts [are] sufficiently developed and considered."  *Hankerson, supra,* 636 F.2d at 895; *Howard v. Astrue,* 2007 WL 4326788 (E.D.N.Y. Dec. 7, 2007) (same); *Pennerman v. Apfel,* 2001 WL 527398 (E.D.N.Y. Apr. 18, 2001) (holding, in context of overpayment waiver hearing that, "[b]ecause a

Social Security benefits hearing is a non-adversarial proceeding, the ALJ has an affirmative duty to develop an evidentiary record that is complete and fair.  Although this duty to develop the record applies even where the claimant is represented by counsel, it is a heightened duty where, as here, the claimant is unrepresented by counsel.") (citations and quotation marks omitted).

Pursuant to 42 U.S.C. § 404(a)(1), whenever the Commissioner finds that an overpayment of benefits has been made to an individual, the Commissioner must recover the amount of the overpayment by decreasing a payment due to such individual or requiring a refund of the overpayment.  42 U.S.C. § 404(a)(1).  However, the Commissioner must waive the repayment of the overpaid benefits "in any case where an overpayment under title II has been made to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience."  *See id*. § 404(b); 20 C.F.R. § 404.506. Otherwise, the Commissioner is authorized to recover the overpayment under SSA regulations. 42 U.S.C. § 404(a)(1)-(A).

Determination of fault is a factual inquiry based on the actions of the individual recipient: "The fact that the [Social Security Administration] may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault." *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir. 1983); *see also* 20 C.F.R. § 416.552.  Fault may be found if the recipient: (1) makes a statement which he knows or should have known to be incorrect; (2) fails to furnish information which he knows or should have known to be material; or (3) accepts a payment which he knew or could have been expected to know was incorrect.  20 C.F.R. § 404.507(a-c); *see Center,* 704 F.2d at 680.  Bad faith on the part of the recipient is not

required—an honest error may constitute fault.  *See Howard,* 2007 WL 4326788, at * 3 (citing *Center,* 704 F.2d at 680).

With respect to the proper procedure for determining fault, the Second Circuit has made clear, relying on Supreme Court precedent, that "where a claimant's 'fault' in receiving overpayments is in issue, recoupment must be preceded by a hearing, since findings of 'fault' require credibility evaluations which can only be properly considered at an oral hearing." *Dorman v. Harris,* 633 F.2d 1035, 1038 n. 2 (2d Cir. 1980) (citation omitted) (citing *Califano v. Yamasaki,* 442 U.S. 682 (1979)).  A proper evaluation of fault requires "an assessment of the recipient's [and/or payee's] credibility . . . to distinguish a genuine hard luck story from a fabricated tale." *Beebe v. Astrue,* 2008 WL 5243890, at *4 (E.D.N.Y. Dec. 15, 2008) *citing Califano v. Yamasaki,* 442 U.S. 682, 696–97 (1979).  When considering whether a waiver of overpayment recovery is warranted, federal regulations require the ALJ to weigh "all pertinent circumstances" in determining whether an individual is at fault.  20 C.F.R. § 404.507.   These circumstances include an assessment of an individual's age, intelligence, education level, proficiency with the English language, or any physical and mental conditions or limitations.  42 U.S.C. § 404(b)(2); 20 C.F.R. § 404.507; *Yankus v. Astrue,* 2008 WL 4190870, at *8 (E.D.N.Y. Sept. 10, 2008).

While fault determinations under Section 404.507 are interpreted liberally, an individual who relies "on erroneous information from an official source within the Social Security Administration . . . will be deemed to be without fault."  20 C.F.R. § 404.510a.  When misinformation claims are raised, the credibility of the claimant [and the payee] becomes a "critical factor in determining whether [they are] without fault . . . [and the ALJ must also make

an explicit determination regarding [their] credibility." *Ming*, 2009 WL 2495947, at *6 (citing *Valente v. Secretary of Health and Human Servs.,* 733 F.2d 1037, 1045 (2d Cir. 1984).

Once the threshold matter of no fault is established, "the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment, and the Secretary has considerable discretion in making these determinations." *Valente,* 733 F.2d at 1041. Recovery of overpayment violates the Act "where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.509(b). "Recovery of an overpayment is against equity and good conscience . . . if an individual [c]hanged his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself." *Id.* § 404.509(a)(1).

However, "[i]f the Commissioner's finding that the claimant was not without fault is supported by substantial evidence, there is no need to consider whether recovery of the overpayments would defeat the purpose of [the Act] or would be against equity and good conscience, 'since those factors come into play only if the recipient is without fault.'" *Chlieb v. Heckler,* 777 F.2d 842, 846 (2d Cir. 1985). "The Secretary's determination of whether these factors have been satisfied may not lightly be overturned." *Valente,* 733 F.2d at 1041.

## DISCUSSION

Plaintiffs argue that the ALJ's decision is not supported by substantial evidence. (ECF No. 34. at p. 5.) The Court agrees because there is an insufficient record.

Most critically, the representative payee did not provide testimony on the key issues in this matter. According to the Social Security Act, the Secretary has the authority to direct payment of benefits to a relative or some other person "for the use and benefit" of the beneficiary and is denoted as a "representative payee." 42 U.S.C. § 404(a)(1); 20 C.F.R. §§ 404.2035(b) and (d). Generally, a representative payee is appointed when the SSA determines that the beneficiary is not able to manage or direct the management of benefit payments in his or her interest. 20 C.F.R. § 404.2001. In turn, the representative payee has certain enumerated responsibilities including a duty to notify the SSA of "any event that will affect the amount of benefits the beneficiary receives or the right of the beneficiary to receive benefits" and "any change in circumstances that would affect performance of the payee's responsibilities." 20 C.F.R. §§ 404.2035(b) and (d); 20 C.F.R. § 404.2025; *see Steinhardt v. Sullivan*, 752 F. Supp. 95, 97 (S.D.N.Y. 1990); *Simons v. Comm'r of Soc. Sec.,* 2021 WL 4711324, at *5 (S.D.N.Y. Sept. 15, 2021), *report and recommendation adopted,* 2021 WL 4710815 (S.D.N.Y. Oct. 8, 2021).

The ALJ directed all his questions to Mr. Vidal, even though Mrs. Vidal—the responsible party—was available to testify. The POMS SI 02260.010 factors, cited by the ALJ, concern the person who has the responsibility to report and/or respond to the SSA – i.e. the representative payee. Where fault is at issue, a hearing must aid in the determination of a credibility evaluation, and the ALJ must make a credibility determination. *Se*e *Califano v. Yamasaki,* 442 U.S. 682 (1979); *Litvin v. Astrue*, 2011 WL 4834138, at *9 (S.D.N.Y. Oct. 12, 2011), *report and recommendation adopted,* 2011 WL 6780916 (S.D.N.Y. Dec. 23, 2011) (The Court remanded because the ALJ failed to give findings of fact and the reasons for decisions and held the ALJ must base its decision on evidence offered at a hearing or otherwise included in the record);

13

*Valente,* 733 F.2d at 1045 (requiring an explicit credibility determination when plaintiff's credibility is a "critical factor" in the without-fault calculus).

The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" about the payee's responsibilities and her understanding of the role. *Gold v. Secretary of HEW, supra,* 463 F.2d at 43.  The ALJ did not ask Mrs. Vidal any questions about whether she received, read and understood the notices from the SSA about the overpayments to her daughter.  Nor did he ask Mrs. Vidal if she understood what her responsibilities were as the representative payee, whether she understood her reporting and repayment obligations, or why she apparently allowed her husband, who had been deemed mentally infirm, to communicate with the SSA about the overpayments or the receipt of workers compensation payments and changes thereto.  Instead, the ALJ appears to have concluded that because the SSA had sent notices to Mrs. Vidal, she must have received them and understood them and simply ignored them.  He also appears to have concluded that she had full information about changes to her husband's workers' compensation benefits and would testify in the same manner as her husband about reporting the benefits without actually asking her any clarifying questions to understand the full facts and circumstances about what happened.  The lack of testimony from the representative payee constitutes a failure to develop the record and precludes a finding that the ALJ's credibility determination and determination that the Vidals are not without fault is supported by substantial evidence. *See Valente,* 733 F.2d at 1046; see also *Schwingel v. Harris,* 631 F.2d 192, 197 (2d Cir. 1980) (Because the question whether Plaintiff was actually erroneously advised by an SSA employee is crucial to determining fault, the ALJ should have inquired into recollection of circumstances to

determine credibility.); *Masotti v. Comm'r of Soc. Sec.*, 2016 WL 5404632, at *2 (E.D.N.Y. Sept. 27, 2016) (The ALJ's failure to question Plaintiff about her understanding of her obligations to report was included among the reasons to require a remand).

In addition, although the ALJ cited to 20 CFR § 404.507, he did not explain his application of this regulation.  Section 404.507 provides that in determining whether the individual was at fault, SSA is to consider "all pertinent circumstances," including the recipient's age, intelligence, education, and physical and mental condition.  20 CFR § 404.507.  In this case, the ALJ did not discuss Mr. or Mrs. Vidal's age, intelligence, education or mental condition.  The ALJ did note that Mr. Vidal was previously found mentally infirm, but questioned that designation in light of Mr. Vidal's testimony and prior communications with the SSA.  This was an error.  The ALJ should have developed the record particularly to determine whether any past mental infirmity was no longer present through questions to both Mr. Vidal and Mrs. Vidal. This was especially important given that the ALJ appears to have relied principally on Mr. Vidal's testimony to reverse the prior "without fault" determination.   Not only was Mr. Vidal not the responsible party, but if Mr. Vidal's "mentally infirm" status is or was properly in place during the relevant time, it would be improper to rely on his testimony in making a fault decision, especially in light of the dearth of facts cited to support the ALJ's reversal of the prior "without fault" finding.  The failure to develop the record and properly apply Section 404.507 of the regulations warrant remand.  *See Gadayeva v. Comm'r of Soc. Sec.,* 2012 WL 6212701, at *4 (E.D.N.Y. Dec. 13, 2012) (Remanding and emphasizing that there were a number of things the ALJ failed to consider that may affect a claimant's credibility including that his mental conditions could constitute sufficient mitigating factors to warrant a finding that Plaintiff was

"without fault" as defined under that law.);  *Masotti v. Comm'r of Soc. Sec.,* 2016 WL 5404632,

at *5–6 (E.D.N.Y. Sept. 27, 2016) (Remanding because the ALJ made no mention of Plaintiff's

mental condition, as required by section 404.507, at the time of her application and there is no

indication that he actually did consider it.).

Third, the ALJ did not fully develop the record regarding the alleged communications

with the SSA.  Section 404.510a of the regulations provides that an individual who accepts an

entitlement overpayment is "without fault" where he "accepts such overpayment because of

reliance on erroneous information from an official source within the [SSA] . . . with respect to

the interpretation of a pertinent provision of the . . . Act or regulations pertaining thereto." Mr.

Vidal testified that SSA employees had advised him on at least five different occasions that he

was entitled to keep the workers' compensation money and "do what he wants with it."  Mrs.

Vidal, the responsible party, was present for some, if not all, of these alleged statements by the

SSA office.  Yet, the ALJ did not ask Mrs. Vidal if she had notations in her calendar of her visits

and calls to the SSA, whether she took down the name of the person who made these

statements, or whether she sought clarification about these statements or how the workers'

compensation payments would affect the SSA benefits paid to C.V. (or to Mr. Vidal).  If Mrs.

Vidal, the representative payee, relied on erroneous information provided by SSA employees,

the Vidals may not be at fault for continuing to accept overpayments.  *Valente,* 733 F.2d at

1044–45; *Dorman v. Harris,* 633 F.2d 1035, 1040 (2d Cir. 1980); *Priolo v. Sec'y of Health & Hum.*

*Servs.,* 645 F. Supp. 39, 43 (E.D.N.Y. 1986) (The Court remanded this case after plaintiff

repeatedly alleged that she received information from an SSA employee that she could keep

the money, but the ALJ merely noted this allegation and made no attempt to inquire as to what

the plaintiff recalled of this alleged incident).  The ALJ had a duty to develop the record so that he could properly apply 20 C.F.R. § 404.510a.  This is another reason for remand.  *Valente v. Sec'y of Health and Human Servs.,* 733 F.2d 1037, 1044 (2d Cir. 1984); *Lieberman v. Shalala,* 878 F. Supp. 678, 681 (S.D.N.Y. 1995) (The district court remanded this case and found that the ALJ neither mentioned § 404.510a nor indicated any potential application in light of Plaintiff's claims that she telephoned the SSA on numerous occasions concerning her benefits.); *Masotti v. Comm'r of Soc. Sec.*, 2016 WL 5404632, at *2 (E.D.N.Y. Sept. 27, 2016) (Finding the ALJ 's credibility analysis was flawed when they failed to consider or reject Plaintiff's claim of reliance on misinformation).

In addition to the above, the record reflects that the Vidals supplemented the record as to their monthly income and expenses.  The ALJ did not question Mr. or Mrs. Vidal about their income or review the various receipts and financial information that, according to Mr. Vidal, showed his expenses exceeded his income.  The ALJ appears to have simply adopted the numbers initially provided by the Vidals in the written request for a waiver rather than actually determine whether the supplemental information changed the equation.  The failure to develop the record or explain why he was rejecting information that suggested the Vidals' expenses exceeded their income precludes a finding that the ALJ's decision is supported by substantial evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion (ECF No. 29.) is DENIED and this case is REMANDED for further proceedings consistent with this opinion.

Additionally, Plaintiff's request that the Court grant leave to amend her complaint (ECF No.34.) is DENIED as moot in light of the remand.

SO ORDERED.

Dated: November 29, 2021
       New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

18